**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **National Credit Union Administration Board, et al.,** | ) | **CASE NO. 1:10 CV 1964** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Lormet Community Federal Credit Union,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment (Doc. 13). Also pending is defendant LorMet Community Federal Credit Union's Motion for Summary Judgment (Doc. 15). This case arises under the Federal Credit Union Act. For the reasons that follow, plaintiffs' motion is GRANTED and defendant's motion is DENIED. Defendant is hereby permanently enjoined from pursuing the arbitration filed against plaintiff.

### FACTS

Plaintiffs, National Credit Union Administration Board, as Conservator and Liquidating

1

Agent for St. Paul Croatian Federal Credit Union ("St. Paul"), and National Credit Union Administration Asset Management and Assistance Center (collectively, "plaintiff"), filed this lawsuit against defendant, Lormet Community Federal Credit Union, seeking to halt arbitration proceedings initiated by defendant.

The facts of this case are largely undisputed. Plaintiff is an independent agency of the executive branch of the federal government, which charters and supervises federal credit unions. St. Paul is a federally chartered credit union.

In May of 2007, St. Paul and defendant entered into a Credit Union Loan Participation Agreement ("Agreement") pursuant to which defendant purchased a 90% interest in a portfolio of loans originated by St. Paul. Under the Agreement, St. Paul retained a 10% ownership interest, along with the rights to service the loans.[1] The Agreement provides that, in the event St. Paul becomes insolvent, defendant "automatically succeed[s] to all rights, titles, status and responsibilities" that St. Paul had "regarding the holding and servicing" of the loans. (Agreement, at Addendum B, ¶4.1). The Agreement also contains a binding arbitration clause.

In early 2010, plaintiff determined that St. Paul was insolvent. In May of 2010, and pursuant to federal statute, plaintiff placed St. Paul into liquidation. Plaintiff named itself as the liquidating agent for St. Paul. An extensive regulatory scheme exists under federal law, which establishes the procedure the liquidating agent must follow in assessing the claims against the estate of St. Paul. On July 2, 2010, defendant submitted a "Written Proof of Claim" to plaintiff.

---

[1] Defendant purchased a 90% participation interest in the loan portfolio. The loans, themselves, however, are titled in St. Paul's name. Thus, defendant's interest arises solely under the Agreement.

In addition to asserting a potential claim for nearly $9 million, defendant indicated that there is "a great incentive to [defendant] to take possession of the portfolio as soon as possible and begin servicing it."

Plaintiff initially showed a willingness to allow defendant to take possession of the loan documents and take over the servicing. On July 20, 2010, plaintiff's counsel indicated, "my client is express mailing to my office the documents necessary to effect transfer of the servicing obligations under the above [ ] Agreement." Thereafter, it appears that plaintiff changed its course and refused to turn over the servicing of the loans.

On August 16, 2010, defendant filed a claim with the American Arbitration Association ("AAA"). The claim seeks injunctive relief. Specifically, defendant asks the AAA to award defendant the right to access the loan files and begin servicing the loans. Thereafter, plaintiff filed this lawsuit seeking to enjoin the arbitration. Plaintiff moved this Court for a temporary restraining order. This Court ordered the parties to continue with the selection of the arbitrator, but temporarily stayed the remainder of the arbitration proceedings to enable the parties to brief the issue of arbitrability on an expedited basis.

Plaintiff moves for summary judgment in which it seeks a permanent injunction restraining defendant from proceeding with the arbitration. Defendant opposes the motion. Defendant also moves for summary judgment and plaintiff opposes the motion.

**STANDARD OF REVIEW**

"A party seeking a permanent injunction must establish each of the following four elements: '(1) actual success on the merits; (2) a substantial threat that it will suffer irreparable injury without the relief requested; (3) that the threatened injury outweighs any damage that the

3

injunction may cause to others; and (4) that the injunction will serve the public interest.'" *T. Marzetti Co. v. Roskam Baking Co.*, 2010 WL 793050 (S.D.Ohio March 3, 2010). *See also, Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 (1987) (standard for granting a permanent injunction is "essentially the same," as that for a preliminary injunction, except that a plaintiff must demonstrate actual success on the merits).

Each element will be addressed in turn.

## ANALYSIS

1. Actual success on the merits

    A. Relevant statutory language

In order to obtain a permanent injunction, plaintiff must demonstrate actual success on the merits. Thus, plaintiff must establish that defendant may not arbitrate its claims under the Agreement. According to plaintiff, the Federal Credit Union Act ("FCUA") is a comprehensive statutory scheme, containing an established procedure for the filing of claims against liquidated credit unions. According to plaintiff, defendant must pursue its administrative remedies under the FCUA and may not invoke the arbitration provision. Plaintiff argues that the statute is designed to protect all creditors and, as such, defendant may not avoid the administrative scheme for its individual benefit. On the other hand, defendant argues that the FCUA does not prohibit arbitration. According to defendant, the plain language of the FCUA only limits defendant from pursuing judicial actions.

As an initial matter, plaintiff correctly points out that the FCUA is a comprehensive scheme designed to protect the interests of creditors of defunct federal credit unions. To that end, Congress provided plaintiff with the authority to administer all claims against St. Paul. 12

4

U.S.C. § 1787(b)(3).  After notice to creditors and receipt of claims, plaintiff must determine whether to allow or disallow each claim.  12 U.S.C. § 1787(b)(5)(A)(i).  Thereafter, plaintiff is statutorily obligated to provide a "notice of disallowance" in the event a particular claim is disallowed.  12 U.S.C. § 1787(b)(5)(iv).  The notice must contain a statement of each reason for the disallowance, as well as the procedures available for obtaining agency review of the disallowance or judicial determination of the claim.  *Id*.

Congress has expressly limited judicial review of creditor claims.  The FCUA provides as follows,

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or
>>
>> (ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent.
>
> The review process afforded to claims reviewed by plaintiff consists of the following,
>
> (6) Provision for agency review or judicial determination of claims
>
> (A) In general
>
> Before the end of the 60-day period beginning on the earlier of–
>
>> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a credit union for which the Board is liquidating agent; or
>>
>> (ii) the date on any notice of disallowance of such claim pursuant to paragraph 5(A)(i),
>
> the claimant may request administrative review of the claim...or file suit on such claim...in the district or territorial court of the United States for the district within which

5

the credit union's principal place of business is located....

12 U.S.C. § 1787(b)(6)(A).

In essence, it appears that plaintiff argues that, generally speaking, the FCUA requires defendant to pursue administrative remedies and, as such, the arbitration provision is "trumped" by the FCUA.

On the other hand, the Federal Arbitration Act (hereafter "FAA"), 9 U.S.C. 1, et seq., expresses "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Thus, in determining whether an agreement to arbitrate is enforceable, courts must be "mindful of the FAA's purpose to 'reverse the longstanding judicial hostility to arbitration agreements...and to place arbitration agreements upon the same footing as other contracts.'"  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). However, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

In determining whether a particular statute overrides the FAA, courts must ascertain the intent of Congress.  Congressional intent "will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purpose." *Id*. at 227.  (citations and quotations omitted).

As an initial matter, the Court agrees with the defendant that the text of the statute does not expressly prohibit arbitration.  Although the statute contains an administrative claims process and a corresponding limitation on judicial review, there is no language in the statute precluding

6

the arbitration of claims.  Moreover, neither party cited any relevant legislative history, which would undermine the express language in the statute.  Thus, the Court must analyze whether there is an inherent conflict between the FAA and the FCUA.

Plaintiff argues that an inherent conflict exists between the FAA and the FCUA because Congress gave plaintiff the authority to liquidate insolvent credit unions and provided a comprehensive administrative claims procedure to follow in performing its duties.  Plaintiff makes no other argument in support of its position that a conflict exists between the two statutes.  Defendant does not address this issue.

In order to address this issue, plaintiff asks the Court to analogize the FCUA with the federal bankruptcy code.  According to plaintiff, arbitration of core claims is prohibited.  Plaintiff likens defendant's claim for specific performance to a "core" claim for which arbitration would be unavailable under bankruptcy law.  The Court has reviewed all of the case law cited by the parties with regard to the applicability of arbitration clauses to bankruptcy cases.  While similar, the Court finds that bankruptcy law is not particularly relevant to the issue before this Court.  For example, plaintiff fails to recognize that the bankruptcy code contains an automatic stay provision, which serves to prevent a creditor from instituting an arbitration proceeding.  The vast majority of the law cited by plaintiff involves the question of whether a creditor can assert an arbitration clause in defense to an adversary proceeding initiated by the trustee.  The case law does not address the question presented here, *i.e.*, whether a creditor can *initiate* an arbitration against the receiver.  This is likely so because the automatic stay provision serves to prevent the initiation of an arbitration proceeding.  *See, e.g.*, *Hays v. Merill Lynch, Pierce, Fenner & Smith*, 885 F.2d 1149, at n.11 (noting that an arbitration proceeding against a debtor is subject to the

7

automatic stay). As set forth above, there is no such provision in the FCUA.

Thus, while certain superficial similarities exist between the bankruptcy code and FCUA, the statutory language is sufficiently different in material respects. Therefore, this Court will not attempt to determine whether defendant's demand for specific performance constitutes a "core" or a "non-core" claim. Rather, the specific language of the FCUA will be addressed.

Upon review, the Court finds that there is an inherent conflict between the FAA and the FCUA. As plaintiff points out, the FCUA is a comprehensive legislative scheme that is designed to protect creditors of defunct federal credit unions. The FCUA contains a detailed administrative claims procedure, pursuant to which all creditors must submit claims. The purpose of the statute is to afford plaintiff, an arm of the executive branch of the government, with the ability to assess and quickly disburse the funds due to creditors of a defunct federal credit union. To that end, the statute precludes judicial review until after the administrative claims procedure is complete. Presumably, this enables plaintiff to assess the credit union's assets and fairly distribute any existing assets to the creditors. At the same time, the administrative claims process provides a centralized system for addressing claims so that whatever assets may remain can be preserved for the benefit of all creditors. The Court finds an inherent conflict in this statutory scheme which operates to benefit all creditors, with the FAA which would essentially serve to place the rights of creditors who have agreements containing arbitration provisions on different footing than those unable to rely on arbitration provisions. In addition, requiring plaintiff to defend creditor claims in arbitration would defeat a primary purpose of the statute, *i.e.*, centralizing the claims process and preserving the limited assets of the defunct credit union. Although it appears that defendant is the only party seeking arbitration,

it is possible that many creditors of a federal credit union could pursue arbitration. The Court finds that Congress's enactment of a statute with a comprehensive administrative claims process, together with a limitation on judicial review, inherently conflicts with the FAA. Accordingly, claims falling within the purview of the FCUA may not be arbitrated.

Although not expressly conceding as such, it appears that defendant actually agrees with this Court's analysis to some degree. Defendant repeatedly points out that it is not seeking money damages in the arbitration. Rather, defendant seeks only specific performance of the right to service the loans at issue. On the other hand, defendant pursued its claims for monetary relief through the administrative claims process of the FCUA. Thus, it appears that defendant would concede that the arbitration of *monetary* claims inherently conflicts with the FCUA. Although not expressly stated, it appears that defendant is really claiming that the arbitration of non-monetary claims is permissible because such a "claim" is not subject to the administrative claims process. If defendant is correct, the FCUA's judicial review limitation would not apply and the claim could proceed either judicially or through arbitration.

According to defendant, only monetary claims are subject to the FCUA's administrative claims procedure. Defendant points out that certain provisions in the Code of Federal Regulations indicate that plaintiff's administrative authority is limited to claims involving money. For example, defendant points out that 12 C.F.R. § 709.5 is entitled "Payout priorities in involuntary liquidation." Defendant further points to 12 U.S.C. § 1787(b)(10)(A) which gives plaintiff the power to "*pay* creditor claims...." (Emphasis added). According to defendant, nothing in the FCUA addresses specific performance or the servicing of the loans of a liquidated creditor. As such, defendant argues that the arbitration of such "claims" is not prohibited by

9

statute.

On the other hand, plaintiff relies on the limitation on judicial review in support of its position.  That provision, as previously set forth above, provides that judicial review is precluded with respect to, "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union...."  According to plaintiff, this provision would limit judicial review and, as such, arbitration should be similarly circumscribed.[2]

Upon review, the Court agrees with plaintiff that the claim at issue is subject to the administrative claims process contained in the FCUA.  As an initial matter, the Court finds that the administrative scheme enacted by Congress is far-reaching.  This is evidenced by the breadth of the limitation on judicial review.  Contrary to defendant's contention, the FCUA's claims process cannot be limited to claims seeking money damages because the judicial review provision is not so limited.  Rather, the provision expressly provides that judicial review is precluded not only for claims involving money damages, but also with respect to "any action seeking a determination of rights with respect to [] the assets."  Thus, provided the "claim" involves a determination of the rights with respect to assets of the credit union, the claim must first be pursued administratively.[3]  In this case, the Court finds that the claim defendant submitted to arbitration squarely falls within the administrative claims process.  Defendant is

---

[2] Plaintiff also claims that defendant submitted its specific performance claim administratively.  Defendant disagrees.  The Court reviewed the submission and agrees with defendant.

[3] The parties present conflicting evidence as to whether plaintiff is properly servicing the loans.  This issue, however, is not before the Court.  Rather, this Court need only decide whether the arbitration may proceed.

10

seeking a determination of the right to service the loans which are an asset of St. Paul. Regardless of the nature of the relief sought by defendant, undoubtedly the issue involves an analysis of a "determination of rights" with respect to the loan portfolio. Because of the clear statutory language, the Court rejects defendant's argument that claims for specific performance are not subject to FCUA's administrative review process.[4]

The parties do not cite any case law applying the FCUA with regard to its exhaustion requirements. Defendant, however, relies on *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997). In *Sharpe*, the Ninth Circuit addressed whether a breach of contract claim filed against the FDIC was subject to the exhaustion requirements of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). The exhaustion requirements contained in FIRREA and FCUA are nearly identical. The Court finds that the Ninth Circuit's decision in *Sharpe* is not controlling or persuasive authority. In *Sharpe*, a bank reached a settlement agreement with the Sharpes. Pursuant to the agreement, the Sharpes were to convey, among other things, a reconveyance of a deed of trust for the bank to record. In return, the settlement agreement required the bank to wire money to the Sharpes. These events were to occur simultaneously. The Sharpes conveyed the document to the bank but, instead of wiring the funds, the bank provided cashier's checks to the Sharpes. That night, the FDIC was appointed receiver of the

---

[4] This Court already concluded that there is an inherent conflict between the FAA and the FCUA. Although not expressly argued, the Court rejects any notion that the conflict only exists with respect to claims for money damages. It would not make sense to prevent the arbitration of all monetary claims, but to require the arbitration of claims seeking other forms of relief. The Court notes that even if arbitration of claims seeking only specific performance were subject to arbitration, the judicial review provision in the FCUA would likely prevent the enforcement of any award.

11

bank. The FDIC attempted to take possession of the documents, but refused to honor the cashier's checks. The Ninth Circuit held that the Sharpes need not comply with the exhaustion requirements contained in the FIRREA because the Sharpes were not creditors. Rather, the FDIC's breach is the only way in which the Sharpes could arguably have become creditors. Thus, the Ninth Circuit concluded that the FDIC's actions cannot transform an entity into a creditor, and thus subject to FIRREA. As such, because the Sharpes were not creditors, the administrative claims process was inapplicable. In contrast, here there is no dispute that defendant is a creditor of St. Paul. To that end, defendant filed an administrative claim seeking money damages arising under the Agreement. Defendant also seeks specific performance of certain obligations arising under the Agreement. While defendant may have an interest in the portfolio, the parties do not dispute that the loan portfolio is an asset of St. Paul. Thus, defendant is a creditor with respect to the asset. Accordingly, the Ninth Circuit's holding in *Sharpe* is inapplicable in this case.

Defendant also argues that the FCUA provides plaintiff with the right to repudiate contracts. According to defendant, plaintiff may not accept the benefits of the contract, but repudiate the detriments. While the Court agrees that the FCUA affords plaintiff the right to repudiate contracts, the existence of this right does not undermine the validity of the administrative claims process.

The last argument defendant makes is that the question of arbitrability must be decided by the arbitrator. According to defendant, the Agreement incorporates the AAA Commercial Rules, which include an agreement to delegate arbitrability questions to the arbitrator. Defendant cites a case from the Second Circuit and two unreported district court cases. Plaintiff

12

simply argues that this is not a "typical case."  This Court agrees.  No party disputes the validity of the Agreement or the arbitration provision contained therein.  Nor do the parties claim that the issue is outside the scope of the arbitration provision.  Rather, the sole issue in this case is whether defendant is allowed to avoid the FCUA's administrative claims procedure by relying on an arbitration provision.  Accordingly, the cases defendant relies on are wholly inapplicable.

For the foregoing reasons, the Court finds that the FCUA precludes arbitration of defendant's claim at this juncture.  The Court notes that it need not reach the issue of whether arbitration would be permitted after the administrative claims process is exhausted.  Accordingly, the Court finds that plaintiff has established actual success on the merits.

2.  Irreparable injury

Ordinarily, an applicant for a permanent injunction must demonstrate irreparable harm.  Under the FCUA, however, plaintiff need not make such a showing.  *See*, 12 U.S.C. § 1787 (b)(2)(H).  Defendant argues that plaintiff must nonetheless establish an injury.  Assuming *arguendo* that defendant is correct, the Court finds that plaintiff succeeds in establishing that it will suffer harm if the arbitration proceeds.  Defendant argues that it simply seeks the right to service the loans and that this will not interfere with the assets of St. Paul.  Plaintiff, on the other hand, claims that defendant might "setoff" amounts it collects and, as such, plaintiff will lose the ability to maintain control over the assets.  These arguments, however, relate to the outcome of the arbitration.  The Court finds that, regardless of the outcome of the arbitration, the harm plaintiff will suffer consists of having to proceed with the arbitration in the first place.  Plaintiff will be required to expend precious resources litigating outside of the congressionally established administrative claims process.  The result of the arbitration will not resolve all of the

issues related to the Agreement. Thus, one aspect of the issue would proceed through arbitration, *i.e.*, the servicing rights issue, while the remaining aspects, *i.e.*, the monetary relief and the alleged fraud, would proceed administratively. The Court finds that a piecemeal approach to resolving defendant's various "claims" in different fora will result in harm to plaintiff. While this harm may not be irreparable, plaintiff need not make such a showing.

      3. Damage to others

With regard to the third factor, the Court finds that any damage defendant may suffer as a result of the imposition of an injunction is outweighed by the injury plaintiff will suffer if the arbitration proceeds. Defendant does not dispute that it submitted its monetary claim through the administrative claims process. Thus, any threatened injury defendant may suffer stems only from its inability to present its claim for specific performance to an arbitrator, as opposed to proceeding through the administrative claims process. Defendant argues that plaintiff is improperly servicing the loans and, as such, they are losing value. While the Court appreciates defendant's position, the harm plaintiff will suffer if required to arbitrate the claim and expend limited resources for the potential benefit of one creditor outweighs any harm defendant may suffer.

      4. Public interest

The Court finds that the public interest is served by issuing an injunction preventing defendant from pursuing its claim in arbitration. Congress enacted a comprehensive administrative claims procedure. Requiring defendant to abide by the procedure serves the public interest and protects St. Paul's resources for the benefit of all creditors.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment. Defendant's motion is DENIED. Defendant is PERMANENTLY ENJOINED from pursuing the arbitration filed against plaintiff.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/17/10